IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANK BROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-00394-N |
| | ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | )<br>) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Frank Brock ("Brock") filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-1383c. Pursuant to the consent of the parties (doc. 21), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. *See* Doc. 23. Plaintiff's unopposed motion to waive oral arguments (doc. 20) was granted on July 27, 2012 (doc. 22). Upon consideration of the administrative record (doc. 13) and the parties' respective briefs (docs. 14 and 16), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

I. Procedural History.

Plaintiff Frank Brock filed an application for SSI benefits on February 11, 2008, claiming an onset of disability beginning January 1, 2003 (Tr. 183-198). Brock alleged

that his disability was due to depression and HIV. (Tr. 212). Brock was forty-one years old at the time he filed his application (Tr. 183). The application was denied on October 8, 2008. (Tr. 72-75). Brock requested reconsideration on November 25, 2008 (Tr. 78-80), which was denied on June 24, 2009 (Tr. 32, 81-82). Brock then timely requested a hearing on September 2, 2009 (Tr. 32, 86) before an Administrative Law Judge ("ALJ"). A hearings was held on November 23, 2010. (Tr. 30-69). The ALJ issued an unfavorable decision on December 9, 2010. (Tr. 13-29). Brock requested a review by the Appeals Council which was denied on May 27, 2011 (Tr. 1-6), thereby making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2009)[1]. Brock has exhausted all his administrative remedies and now appeals from that final decision.

II. Issue on Appeal.

Whether the Appeals Council committed reversibly error by failing to consider the additional opinion evidence submitted by Brock, namely the opinion of Phillip Rawlings, M.D., which Brock contends was not available at the time of his administrative hearing? [2]

III. Standard of Review.

A. Scope of Judicial Review.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2011 edition.

[2] The only claim raised by claimant Brock in this appeal is that the Appeals Council failed to properly consider a "Mental Residual Functional Capacity" questionnaire completed by Phillip Rawlings, Jr., M.D. Brock offers no explanation for why these records were not timely presented to the ALJ.

decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

B. Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). The Eleventh Circuit has described the evaluation to include the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* Bell v. Astrue, 2012 WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan. 17, 2012).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 (“grids”),or hear testimony from a vocational expert (VE). Id. at 1239–40.

IV. Findings of Fact and Conclusions of Law.

A. Statement of Facts.

1. Vocational Background.

Brock was 43 years old at the time of his administrative hearing. (Tr. 37). Brock finished high school and testified that he was in “special ed” classes. (Tr. 41). His most recent job was working part-time, 20-25 hours per week at $7.00 to $8.00 an hour, as an exterminator (Tr. 42). He testified that he was “trying to build up to [] 40 hours [per week, but that] they didn’t have the business” (Tr. 43) and Brock stopped working in October of 2010. (Tr. 44). Brock previously worked selling tickets at a racetrack (Tr. 45-46), cooking at a fast food restaurant (Tr. 46), cleaning up at a store (Tr. 47), and as a stockroom/warehouse worker (Tr. 47).

2. Medical Evidence Before the ALJ.[4]

[4] Brock has limited his appeal to a single issue concerning the Appeals Council’s refusal to consider Dr. Rawlings’ “Mental Residual Functioning Capacity” questionnaire. Only those facts which relate to that issue will be considered on appeal. *See* Sepulveda v. U.S. Atty. Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (arguments not raised in an opening brief are waived).

Brock was treated for depression at Daymark Recovery Services from December 2006 through October 2009. (Tr. 404-447, 544-545). When he first presented for treatment on December 7, 2006, he indicated that he was feeling depressed because he had just lost his job and the holidays were coming (Tr. 434)[5]. At his follow-up evaluation with Dr. Mercedes M. DeRivers, a psychiatrist, on December 29, 2006, Brock reported no problems with concentration and noted that his panic arracks were much less frequent since taking Xanax. (Tr. 419). On February 23, 2007, Brock again presented to Dr. DeRivers who stated that he "works and has a good relationship with co-workers as well as family" and that Brock "today reports that the medication is doing well for him but he still feels that he likes to be involved in some individual and group therapy." (Tr. 432). At his August 17, 2007, appointment Dr. DeRivers reported that Brock was "doing well" and "is also involved with vocational rehabilitation . . . helping him make arrangements for an interview and maybe some training." (Tr. 428). On November 7, 2007, Dr. DeRivers increased the dosage of Brock's medication, continued the Lamictal "to see if we can stabilize his mood," and recommended group therapy, which Brock said he was not interested in (Tr. 426-427). Dr. DeRivers also reported that Brock was "unemployed and has not been able to find a job," which was associated with the episodes of anger Brock described. (Tr. 426). In February 2008, Dr. DeRivers discussed the death of Brock's partner in 2000, the fact that Brock currently lives in the same house which he shared with his now deceased partner along with his mother, his partner's brother who suffers from Down Syndrome and the partner's aunt. (Tr. 424). It was specifically noted

[5] A clinical assessment form used at Brock's first appointment was completed by Dana Parris, LPC. (Tr. 434-446).

that Brock's condition was complicated due to bereavement (Tr. 424-425). In April, his medication was adjusted due to "situational problems" and continued mourning and grieving (Tr. 412). On June 5, 2008, Brock reported that "everything [had] been going on well," and he denied any significant depressive symptoms (Tr. 407). On December 12, 2008, Brock was seen by Dr. Adamu Salisu and again reported that he had "continued to do well" without significant problems (Tr. 404). On April 20, 2009, Dr. Salisu concluded that Brock's condition had been stable with medication "for quite some time now," and that Brock "as usual" reported that "he [was] doing pretty well." (Tr. 545). On October 8, 2009, Brock indicated he did well intermittently with some "off and on" depression, although he acknowledged that his medication was "very effective" (Tr. 544).

On September 23, 2008, Brock underwent a consultative psychological evaluation performed by Richard Pallazza, Ph.D. (Tr. 345-347). Dr. Pallazza concluded that Brock could perform simple, routine, or repetitive tasks, although he noted that capacity may be episodic because "he has always been dissatisfied with his jobs and other responsibilities and he found convenient excuses to leave work" (Tr. 347). Dr. Pallazza also indicated that Plaintiff could read, write, and understand instructions; could interact with peers, coworkers, and supervisors; and that his tolerance for work place stressors had been episodic (Tr. 347).

3. The Administrative Law Judge's Decision.

After considering all of the evidence, the ALJ found that Brock's major depressive disorder, anxiety disorder, HIV positive, and neuropathy were "severe" impairments (Tr. 18, Finding No. 2), but that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R., pt. 404, subpt. P, app. 1 (Tr. 18, Finding No. 3). The

ALJ additionally found that Brock's subjective allegations of pain and functional limitations were not entirely credible (Tr. 21). The ALJ specifically concluded:

> In terms of claimant's alleged mental impairments, the claimant testified he receives regular mental health treatment. However, the medical evidence of record demonstrates relatively little mental health treatment. The claimant has required no emergent care for his alleged mental impairments. The claimant has required no hospitalizations for his alleged mental impairments. Treatment records do reveal the claimant has sought outpatient treatment for symptoms such as: insomnia; appetite flunctuations; feelings of hopelessness, guilt and shame; loss of interest in activities; and self isolation. (*See e.g.* Exhibit 4F at 42 [TR. 445]). Treatment records state the claimant has received mental health treatment (therapy and medications) since at least 2002. *Id*. at 29 [Tr. 432]. Treatment notes from 2007 also state "medication is doing well for him but he still feels that he likes to be involved in some individual or group therapy. *Id*. The claimant's treating psychiatrist has diagnosed the claimant as suffering from: major depression, recurrent, moderate; and anxiety disorder. *Id*. She also prescribed medications such as Cymbalta, Xanax, Lamictal, Abilify, Prozac and Cogentin.. *See id*. at 6, 7 and 26. [Tr. 409, 410 and 429]. Treatment notes from June of 2008, show the claimant's treatment was effective and his symptoms were considerably improved. *Id.* at 4 [Tr. 407]. The claimant reported "that everything has been going well" and he denied all depressive symptoms. *Id*. In December of 2008, the claimant reported "that he has continued to do well. No significant problems. He [was] anxious, however, that the holidays [were] approaching and he [was] single." *Id*. at 1 [Tr. 404]. The psychiatrist noted the claimant "is HIV positive but he says he is looking at it positively and believes he will be able to get through the holiday without any significant problems." *Id*. Similarly, in April of 2009, treatment notes state the claimant's symptoms are stabilized with medication and he continues to do well. (Exhibit 9F at 2 [Tr. 545]). Also, the claimant's most recent mental health treatment records (dated October 8, 2009) state "he is doing well intermittently. He experiences depression but says that is off and on." *Id*. at 1 [Tr. 544]. The claimant "describes that hiscurrent regimen is very effective." *Id*. The claimant testified "the Prozac and Abilify worked pretty good" controlling his symptoms. This longitudinal review of the claimant's medical evidence of record demonstrates the claimant's symptoms are well controlled by his medications and counseling. The claimant's mental health symptoms only affect him intermittently. The medical evidence of record is inconsistent with the claimant's allegations regarding the intensity, persaistence and limiting effect of his psychological symptoms.

Tr. 22.

The ALJ specifically found that Brock retained the residual functional capacity to perform light work that required only that he understand, remember, and carry out short/simple, one and two step instructions; never work in crowds; have only occasion contact with the public; have occasional/superficial contact with coworkers, but never work in a "team" setting; and have only minimal changes in the work setting and routine (Tr. 20, Finding No. 4). Because Brock's past relevant work as a warehouse worker and cleaner were not precluded by this residual functional capacity (Tr. 23, Finding No. 5), the ALJ determined that Brock was not disabled as defined by the Act (Tr. 26, Finding No. 6).

4. Medical Evidence Submitted to the Appeals Council.

On February 25, 2011, Brock submitted medical records from Providence Family Physicians (PFP) to the Appeals Council (Tr. 557), covering the period from July 2009 through September 2010 (Tr. 558-592). Dr. Rawlings of PFP treated Brock for a variety of routine physical complaints, including a knot in his groin (Tr. 564), back pain (Tr. 567), and a rash (Tr. 573). There is no indication from the records that Dr. Rawlings provided any treatment to Brock for depression or anxiety.

On December 10, 2010, after the ALJ's decision was issued, Dr. Rawlings completed a "Mental Residual Functional Capacity Questionnaire" at the request of Brock's attorney (Tr. 555-556). Dr. Rawlings opined that Brock had "none" to "mild" limitations in many areas of mental functioning, but indicated that Brock was moderately limited in his ability to respond to customary work pressure, would frequently have deficiencies of concentration, and could be expected to have four or more episodes of decomposition (Tr. 555-556). Although it appears that Dr. Rawlings first treated Brock

in July 2009 (Tr. 580), he said that Plaintiff had suffered from those symptoms and limitations for twenty years (Tr. 556). However, Dr. Rawlings also acknowledged that Brock was "stable on meds" (Tr. 556).

B. Analysis.

In this appeal[6], Brock has abandoned all claims of ALJ error[7] and, instead argues only that the Appeals Council erred by failing to consider evidence he obtained from a "treating physician" after the ALJ had ruled that he was not disabled.[8] (Doc. 16 at 2). According to Brock, "20 C.F.R. § 404.970(b) sets forth the circumstances under which the Appeals Council will review a case", which includes:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

---

[6] Brock alleged a disability beginning January 1, 2003 (Tr. 183); however, when a claimant files an SSI application, the earliest month in which he can receive benefits is the month following the month in which his application was filed. *See* 20 C.F.R. § 416.335. Thus, the issue before the ALJ was whether Brock met the statutory requirements for disability between February 11, 2008 (the date Brock's application was filed) and December 9, 2010 (the date of the ALJ's decision).

[7] It is well established that a claimant's failure to raise an issue to the district court on appeal from the denial of benefits operates as a waiver. *See* KDB ex rel. Bailey v. Social Security Administration, Comm'r, 444 Fed.Appx. 365, 367 (11th Cir. Sept. 29, 2011), *citing* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)((providing that we will not address an issue on appeal when a claimant has failed to raise it to the district court).

[8] Brock relies solely on the "Mental Residual Functioning Capacity Questionnaire" completed by Phillip Rawlings, M.D. on December 10, 2010, (Tr. 555-556), and allegedly supported by Dr. Rawlings' office visit records (Tr. 558-592).

*Id.*, *quoting* 20 C.F.R. § 404.970(b). Brock also relies upon 20 CFR § 404.1527(d) for the proposition that proper weight was not given to the medical evidence submitted to the Appeals Council after the ALJ's unfavorable opinion. *Id.* This regulation concerning the evaluation of opinion evidence provides:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we will consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship.
> (2) Treatment relationship.
> (3) Supportability.
> (4) Consistency.
> (5) Specialization. And
> (6) Other factors.

*Id.* at 2-3, *quoting* 20 CFR § 404.1527(d). Brock argues, in sum, that "remand is appropriate under sentence four when 'the Appeals Council did not adequately consider the additional evidence'." *Id.* at 3, *quoting* Ingram v. Commissioner of Social Security Admin., 496 F.3d 1253, 1268 (11th Cir. 2007). Brock specifically contends that the opinion of Dr. Rawlings "is well supported and not inconsistent with other substantial evidence in the case record." *Id.* at 2. Brock then argues simply that "Dr. Rawlings' opinion is supported by the record as a whole" because, *inter alia* "records [albeit not Dr. Rawlings' records] show that the Plaintiff has consistently undergone treatment for major depressive disorder and panic disorder." *Id.* at 3-4. Brock's argument is without any merit.

"[A] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." Cherry v. Heckler,

760 F.2d 1186, 1193 (11th Cir. 1985). However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1067 (11th Cir. 1994). Under Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision. To make that determination, the Court considers whether the claimant "establish[ed] that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,( that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).

At the time of the hearing on November 23, 2010, the ALJ granted Brock leave to submit any additional evidence within fourteen days. (Tr. 68, 69). The ALJ questioned Brock regarding his treatment from Dr. Rawlings (Tr. 69) and reminded counsel at the conclusion of the hearing that the record would remain open for fourteen days. Brock offers no explanation for his failure to submit Dr. Rawlings' opinion and records until February 25, 2011, more than two and one-half months after the ALJ rendered the unfavorable opinion, to the Appeals Council for a review. Moreover, Brock does not contend that he ever submitted these records to the ALJ or that he requested but was denied an extension of time within which to do so. Medical reports issued by treating physicians after issuance of an ALJ decision are less persuasive than opinions issued

prior to the ALJ decision. *See, e.g.*, Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996). In any event, the opinion of Dr. Rawlings is not compelling and cannot provide a reasonable basis for changing the ALJ's determination. *See, e.g.*, Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011)("When a claimant properly presents new evidence to the [Appeals Council], we essentially consider the claimant's evidence anew to determine 'whether that new evidence renders the denial of benefits erroneous'."), *quoting* Ingram, 496 F.3d at 1262. *See also* Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (a brief and conclusory opinion that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability).

Further, Dr. Rawlings, a family physician[9], treated Brock on only a handful of occasions before the ALJ's decision was issued for such non-psychiatric medical issues as a "knot in the groin" (Tr. 564) and a rash (Tr. 573). (Tr. 575, 578, 580).[10] Dr. Rawlings' treatment notes are not only sparse but fail to contain any finding which would support his assessment. (Tr. 575, 578, 580). *See* Jones, 941 F.2d at 1532-1533 (good cause exists to discount a physician's opinion where it is inconsistent with their own medical records).

In addition, Dr. Rawlings first treated Brock in July 2009 (Tr. 580) but has opined that the limitations he describes in his assessment dated December 10, 2010, applied as far back as "20 years ago." (Tr. 556). Brock has failed to demonstrate that Dr.

---

[9] Brock testified at the hearing that Dr. Rawlings was his mother's physician and that he was treated by Dr. Rawlings on 4-5 occasions in the past year (Tr. 68)

[10] *Cf.* 20 C.F.R. § 416.927(d)(2)(I) ""Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Rawlings' treatment records support such a finding. Nor can support be found in the treatment records from Daymark Recovery Services, which are in fact inconsistent with Dr. Rawlings because they show that, while Brock complained of some situational depression, his medication "worked" for him (Tr. 419, 432, 544, 545), and he got along well with others and had no problems concentrating (Tr. 419, 432). The Daymark Recovery records also reflect that Brock repeatedly reported that he was doing well (Tr. 404, 407, 545), and Dr. Salisu concluded that his condition had been stable with medication "for quite some time" (Tr. 545). Indeed, Dr. Rawlings himself acknowledge that Brock was stable on his medication (Tr. 556). Consequently, Brock's contentions on appeal are without merit.

CONCLUSION.

For the reasons stated above, the Court concludes and it is therefore **ORDERED** that the decision of the Commissioner denying plaintiff's application for disability benefits is supported by substantial evidence and is due to be and is hereby **AFFIRMED**.

Done this 6th day of August, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**